**Claude Danny SHRADER, Appellant,**

v.

**Patricia R. HARRIS, Secretary of Health, Education & Welfare, Appellee.**

No. 79–1538.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1980.

Decided Sept. 26, 1980.

**298**

Michael F. Gibson, Princeton, W. Va. (Johnston, Holroyd & Gibson, Princeton, W. Va., on brief), for appellant.

Edith Ho, Asst. Regional Atty., Dept. of HEW, Philadelphia, Pa. (Stephanie W. Naidoff, Regional Atty., Gary S. Turetsky, Asst. Regional Atty., Region III, Dept. of HEW, Philadelphia, Pa., E. Montgomery Tucker, U. S. Atty., Roanoke, Va., Faye S. Ehrenstamm, Asst. U. S. Atty., Roanoke, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Claude Danny Shrader appeals from an order of the district court which dismissed for lack of jurisdiction his action to review the Secretary's summary dismissal of his fourth Social Security disability claim. The Secretary ruled that the doctrine of res judicata barred a hearing on the claim. We

reverse the district court's order and direct the Secretary to conduct an evidentiary hearing to determine Shrader's mental competency to understand the administrative procedure necessary for appeal of the ex parte denials of his previous pro se applications.

## I.

Shrader first filed for benefits in 1968 alleging physical disability caused by shrapnel wounds he received in Vietnam. The Secretary found that Shrader was not totally disabled and denied the claim without a hearing. Shrader did not appeal. In 1970 he filed a second application alleging the same disability and onset date. Again it was denied, and he did not appeal. A third application in 1974 was denied on the grounds that Shrader was not disabled prior to June 30, 1971, the last date on which he met the earnings requirements. Shrader requested reconsideration. This was denied and he did not appeal. Each claim, presented pro se, was decided without a hearing. The Secretary informed Shrader of each denial on a standard form which notified him of his right to appeal.

Shrader filed his fourth application in 1977, this time with the assistance of counsel. The application was presented as a new claim and alleged inability to work since January 25, 1968, due to service wounds. After the Secretary denied this claim, Shrader moved for reconsideration; this was denied. Shrader then asked for a hearing before an administrative law judge. In support of this motion, Shrader filed a report of an examination conducted by a psychiatrist and clinical psychologist in June 1977 which stated in part:

In 1967 he suffered shell blast and was hospitalized for approximately a year and a half. Apparently the shell shock affected his entire body and he also lost hearing in his left ear. Since then he is living more of a vegetative like existence, and emotionally he started to deteriorate at first to a schizoid like existence. Later on he started to show signs of depression and also quite strong paranoid thinking. . . . He has already regressed to a psychotic level and the process apparently continues at a rather steady rate.

The administrative law judge dismissed the request for a hearing. He noted that all prior medical records dealt with the wounds Shrader sustained in Vietnam without mentioning any mental abnormality. Consequently, he concluded that the psychiatric report did not establish mental impairment prior to 1971 when Shrader met the Act's earning requirements. Applying the doctrine of res judicata, he held that the ex parte denial of the 1974 application barred the right to a hearing on the 1977 claim. He made no findings, however, about Shrader's mental capacity to appeal either the 1974 claim or the two earlier claims. The Appeals Council affirmed.

Shrader then sought review in the district court asserting, as paraphrased by the district judge, that "his defective mental condition operates so as to release him from application of the doctrine of res judicata." In support of this allegation, he submitted additional affidavits attesting to his prolonged and severe mental illness. Although he did not expressly cite the fifth amendment, it is apparent that he claimed a denial of due process on the ground that his mental illness prevented him from understanding the procedures to obtain review of the denial of his earlier claims. The district court dismissed for want of jurisdiction, relying on *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and *Teague v. Califano*, 560 F.2d 615 (4th Cir. 1977).

## II

The Supreme Court's opinion in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), controls the jurisdictional analysis of Shrader's case. In *Sanders* the Supreme Court rejected the claimant's argument that 42 U.S.C. §§ 405(h) and 405(g) * confer jurisdiction on federal courts

* Section 405(h) states in relevant part that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency" except as provided with-

to review the Secretary's decision not to reopen a claim.

■ *Sanders* involved only motions to reopen, but we think it is clear that the underlying rationale applies to administrative res judicata decisions as well. *See Teague v. Califano*, 560 F.2d 615, 617–18 (4th Cir. 1977); *Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970). Although the claimants in *Easley* and *Teague* had received at least one administrative hearing on the merits of their claims, we believe that the jurisdictional bar also applies to res judicata decisions predicated on ex parte denials. *See Matos v. Secretary*, 581 F.2d 282 (1st Cir. 1978).

The *Sanders* bar, however, is not absolute. Adjudication of constitutional questions remains as an exception to the rule against judicial review. *Sanders*, 430 U.S. at 109, 97 S.Ct. at 986, explains the reason for this exception:

> Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions . . . . [W]hen constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by "clear and convincing" evidence.

■ Before addressing the merits of Shrader's claim, we must consider one other jurisdictional issue. From the scant administrative record before us, we assume that Shrader did not squarely present his constitutional claim to the Secretary. This omission, however, is not fatal. The Supreme Court considered a similar situation in *Mathews v. Eldridge*, 424 U.S. 319, 326–32, 96 S.Ct. 893, 898–901, 47 L.Ed.2d 18 (1976), where the claimant did not assert in the administrative proceeding that the due process clause entitled him to an evidentiary hearing before his disability benefits could be terminated. The Court, noting that this issue was inappropriate for decision by the Secretary and that the claimant had fully presented his request for benefits to the Secretary, concluded that the denial of this request "constitutes a final decision for purposes of § 405(g) jurisdiction over his constitutional claim." 424 U.S. at 332, 96 S.Ct. at 901.

Here, as in *Eldridge*, Shrader's constitutional claim is collateral to his claim for benefits. Moreover, Shrader exhausted his administrative remedies when he presented his current claim. The dismissal of his request for a hearing and the consequent denial of benefits are final. Therefore, applying the precedent established by *Eldridge* and *Sanders*, we conclude that we have jurisdiction over his constitutional claim.

### III

When a claim for disability benefits is administratively denied, the claimant may seek reconsideration within 60 days. 20 C.F.R. §§ 404.910–.912 (1979). If this, too, is denied, the claimant is allowed another 60 days to request an evidentiary hearing before an administrative law judge. 42 U.S.C. § 405(b). Without such a request, the ex parte denial becomes final. 20 C.F.R. § 404.908 (1979). Shrader's failure to seek an evidentiary hearing after the denial of his 1974 claim provided the basis for the administrative ruling that res judicata barred the right to a hearing on his 1977 claim. This doctrine has been incorporated into the Secretary's regulations, 20 C.F.R. § 404.937(a):

> The [administrative law judge] may, on his own motion, dismiss a hearing request . . . under any of the following circumstances:
>
> (a) *Res judicata*. Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the

in the Act itself. Section 405(g), the only section within the Act relating to judicial review, authorizes review of "any final decision of the

Secretary *made after a hearing* . . . ." (emphasis added)

same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision.

For the purpose of our discussion, we must assume, albeit without deciding, the truth of Shrader's proffered evidence of mental incompetency. The issue raised by Shrader's constitutional claim is narrow: when mental illness precluded a pro se claimant from understanding how to obtain an evidentiary hearing after ex parte denial of his application for benefits, does the summary dismissal on res judicata grounds of his motion for a hearing with respect to a subsequent application deprive that claimant of property without due process of law?

*Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), recognizes that entitlement to Social Security disability benefits is a statutory property interest protected by the due process clause. Because all of the procedural rights secured by this clause are not required for the administration of the Social Security Act, the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), explained the proper analysis for determining whether challenged administrative procedures are constitutionally sufficient:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The answer to the first inquiry of the *Eldridge* test is readily apparent. If the ex parte disposition of Shrader's 1974 application is allowed to support summary res judicata dismissal of all subsequent applications, Shrader, despite his incompetency, forever will be barred from obtaining a hearing on the merits of his claim.

Shrader's situation differs from that of the claimant in *Eldridge*. The *Eldridge* claimant's rights to a hearing after his benefits were terminated and to full retroactive relief if he prevailed at the post–termination hearing were significant factors in the Supreme Court's decision that he was not entitled to a pre–termination hearing. 424 U.S. at 340, 349, 96 S.Ct. at 905, 909. In *Eldridge*, the claimant's loss from an erroneous ex parte decision to terminate benefits would be confined to the suspension of payments between termination and the post–termination hearing. In contrast, if the ex parte denial of benefits to Shrader on his 1974 claim were erroneous, summary application of the doctrine of administrative res judicata to dismiss his request for a hearing on his 1977 claim would result in a total, irrevocable, ex parte deprivation of benefits for his 1967 wounds.

Second, the risk to Shrader of an erroneous deprivation of benefits is the risk of error inherent in the differences between an ex parte proceeding and a hearing. So important are these differences that a "fundamental requirement of due process" is recognized to be " 'the opportunity to be heard' . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Congress demonstrated its awareness of the risk of error in ex parte proceedings by affording de novo evidentiary hearings as a matter of right to claimants whose applications for benefits were denied ex parte. 42 U.S.C. § 405(b).

Although Congress provided that a claimant must exercise this right in 60 days, it did not address the predicament of a claimant who is so mentally ill that he cannot understand the administrative procedure. In the absence of any manifestation of congressional consideration of this problem, we

will not attribute to Congress an intent to apply the doctrine of res judicata to deprive such a person of a hearing. Interpretation of the statute as preclusive would raise an unnecessary, and therefore improper, question of its constitutionality. *See Greene v. McElroy*, 360 U.S. 474, 507–08, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377 (1950); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

A subsidiary inquiry of *Eldridge*'s second test is the value, if any, of substitute or additional procedural safeguards. A substitute safeguard to avoid Shrader's dilemma is available. Because the risk of error arises from summary application of the doctrine of res judicata on the basis of an ex parte denial of a mentally ill pro se claimant's prior claim, the Secretary can eliminate this risk by conducting a hearing on the claimant's competency before invoking the doctrine to bar his subsequent claim.

*Eldridge* also requires us to consider the burden on the government.of changing the challenged procedure. As our remand makes clear, the change involves a relatively light burden on the Secretary. It will prohibit the Secretary from summarily invoking the doctrine of res judicata when a claimant presents prima facie proof that mental illness prevented him from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim. Instead, the Secretary will be obliged to conduct an evidentiary hearing to determine the claimant's mental competency. Only if the claimant is found incompetent need the Secretary afford him an evidentiary hearing on the merits of his claim.

Our opinion applies solely to claimants afflicted by mental illness whose initial claims, presented pro se, were denied ex parte. The claimants must present prima facie evidence of incompetency. The opinion does not require the Secretary to make initial inquiry about the mental competency of each applicant, nor does it require the Secretary to provide counsel to mentally ill claimants. *See Easley v. Finch*, 431 F.2d 1351, 1353–54 (4th Cir. 1970).

■ In summary, our consideration of the criteria prescribed by *Eldridge* to strike a balance between the interests of a claimant and the interests of the government leads us to conclude that a substantial interest of the claimant is affected by the Secretary's action; that the risk of an erroneous deprivation of benefits is significant, and it can be eliminated by a change in the Secretary's procedures; and, finally, that the change required to afford the claimant due process imposes a comparatively slight burden on the Secretary. We therefore hold that in view of the proffered evidence concerning Shrader's mental illness, summary dismissal of his request for a hearing on his 1977 application on the ground that the ex parte denial of his 1974 pro se claim is res judicata deprived him of a property interest without due process of law.

*Howard v. Califano*, 590 F.2d 137 (5th Cir. 1979), and *Matos v. Secretary*, 581 F.2d 282 (1st Cir. 1978), on which the government relies, do not require a different result. Both cases recognized that courts can review constitutional questions as explained in *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). In *Howard*, however, no constitutional question was raised. In *Matos*, although unconstitutionality was alleged, the claimant's proof was insufficient to support her assertion of incompetency.

### IV

■ The judiciary, and not the Secretary, is the appropriate forum for the resolution of constitutional issues. *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Nevertheless, the fact–finding process necessary to execute a court's constitutional decision is the province of the Secretary and not the district court. 42 U.S.C. § 405(b). We therefore reverse the judgment of the district court and direct it to remand Shrader's claim to the Secretary with instructions to afford Shrader an evidentiary hearing. The purpose of this hearing is to determine whether Shrader's mental condition pre-

vented him from understanding the administrative process for appealing his prior claims and the consequences of his failure to pursue this process during the course of his pro se applications. The burden of proof is Shrader's because he seeks exemption from the Secretary's regulation, 20 C.F.R. § 404.937(a), and he has better access to proof of his mental condition than the Secretary.

If the Secretary concludes upon a complete record that Shrader was unable to comprehend the administrative process and the necessity of appeal, the Secretary should grant Shrader a hearing on the merits of his application. If the Secretary concludes that Shrader had sufficient mental capacity, the Secretary may properly dismiss Shrader's 1977 application on res judicata grounds.

*REVERSED AND REMANDED.*