**Herman PENNER, Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

**No. 82–5337.**

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1982.

Decided Feb. 28, 1983.

---

Barry M. Simpson (argued), Brennan, Robins & Daley, Pittsburgh, Pa., for appellant.

David Hyman (argued), Asst. Regional Atty., Diane C. Moskal, Regional Atty., Region III, Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Anthony M. Mariani, Asst. U.S. Atty., W.D. Pa., Pittsburgh, Pa., for appellee.

Before HUNTER, GARTH, Circuit Judges, and STERN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

The Secretary of Health and Human Services dismissed Herman Penner's request for a hearing to review the denial of his application for disability insurance benefits. Mr. Penner filed suit in the United States District Court for the Western District of Pennsylvania seeking judicial review of that decision. The district court held that, under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1976 & Supp. IV 1980),[1] it lacked jurisdiction to review the Secretary's decision and dismissed the complaint. Mr. Penner appealed to this court.

We find that Mr. Penner raised before the district court a colorable constitutional claim that the Secretary violated his due process rights by failing to provide him with adequate notice of his right to request a hearing. We hold that, by so doing, Mr. Penner properly presented a constitutional challenge to the Secretary's decision within the meaning of *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and thus the district court did have jurisdiction to review the Secretary's refusal to grant Mr. Penner a hearing. Accordingly we reverse the district court's order dismissing Mr. Penner's complaint.

## I

On March 7, 1979, Herman Penner filed an application for disability insurance benefits under Title II of the Social Security Act

---

* Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. Section 205(g) states in relevant part:
   (g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.
   42 U.S.C. § 405(g) (1976 & Supp. IV 1980).

("Act"). 42 U.S.C. §§ 401–433 (1976 & Supp. IV 1980). At the time of his application, Mr. Penner was 58 years old and lived in Pittsburgh, Pennsylvania. He was married and was the father of two adult married children.

In the late 1930's Mr. Penner attended the University of Pittsburgh in Pittsburgh, Pennsylvania. After receiving his undergraduate degree in 1941, he entered the university's law school where he was described as a "brilliant" student. During his second year in law school, however, he was drafted into the Army and was required to drop out of school. Less than ninety days after entering the service, he suffered a severe emotional breakdown which resulted in his immediate discharge. Because his emotional condition continued to deteriorate after his discharge, Mr. Penner underwent a prefrontal lobotomy in April of 1946.

Following his operation Mr. Penner had to "grow up" again. Initially he had to be fed and diapered by his family, but slowly he learned to take care of his own personal needs. Beginning in 1957 he was employed by his father in the family meat packing business. His performance on the job was erratic and unreliable, and his attendance at work was not mandatory. His ability to relate to other people and to changing situations was limited because of substantial changes in mood and personality. His brief attempts at other employment were repeatedly unsuccessful due to his unstable emotional state. In 1974 Mr. Penner's father died, and the family business folded. Since that time his family has occasionally given him odd jobs, apparently to prevent him from feeling totally useless. App. at A52, A57, A71–72.

Mr. Penner has been diagnosed as having a schizophrenic reaction with depressive features. Physically he is healthy and is able to walk, swim, and perform small chores at his synagogue. He is able to take care of his basic personal hygiene and the cleaning of his apartment. Mr. Penner's I.Q. is high and his speech is clear, yet he displays significant gaps in memory and insight. He often forgets dates, places, and sequences of events. He does not handle his own financial affairs. He often becomes confused when telling a story and is not able to logically follow through with thoughts. His swings in mood are severe and have resulted in his inability to function in an unfamiliar work environment at a consistent level. Because of his inner anger and confusion resulting from his mental limitations, Mr. Penner has been described as a "bad risk" with a poor prognosis for rehabilitation. See app. at A55.

After considering Mr. Penner's medical and occupational history, the SSA denied his application for disability benefits on May 23, 1979. At the prompting of his family, Mr. Penner contacted an attorney about his denial on August 17, 1979. The attorney immediately sent a letter to the Social Security Administration ("SSA") advising it that he represented Mr. Penner and requesting review of the denial notice by an Administrative Law Judge. Five days later he sent another letter asking that the SSA "re-examine" the file to make a further determination in the case. On the same day Mr. Penner filed a formal request for reconsideration. The form was marked by the SSA office to indicate that Mr. Penner may need assistance in supplying information and listed his attorney's address and telephone number. App. at A39, A44.[2]

On December 13, 1979, the original determination denying disability benefits was affirmed. A notice was sent to Mr. Penner on January 2, 1980. The SSA failed, however, in violation of its own regulations,[3] to

2. Mr. Penner's request for reconsideration was filed by his attorney 31 days past the 60 day limit for filing such requests. See 20 C.F.R. § 404.911 (1980) (then existing regulation). In his letter of August 22, 1979, Mr. Penner's attorney indicated that the delay occurred because Mr. Penner had not understood the time period involved. App. at A38. The SSA apparently accepted the attorney's explanation and processed Mr. Penner's request for reconsideration despite its untimeliness.

3. Under the regulations then in effect, notice of a reconsideration decision had to be sent to the party to the initial determination and to any

send any notice to his attorney that Mr. Penner's request for reconsideration had been turned down. The SSA's failure was despite the fact that Mr. Penner's attorney had notified the SSA of his representation of Mr. Penner and despite the fact that the SSA interviewer had indicated on Mr. Penner's Request for Reconsideration form that Mr. Penner required assistance.

Because he had received no information on the reconsideration request, in late July of 1980 Mr. Penner's attorney asked an associate to check the SSA records. The associate reviewed the records and discovered a copy of the January 2, 1980 denial notice sent to Mr. Penner. Mr. Penner's attorney immediately filed a request for a hearing.[4] The SSA received the request on July 30, 1980, almost five months after the date for filing such a request had passed. *See* 20 C.F.R. § 404.918 (1980).[5]

On February 27, 1981, the SSA dismissed Mr. Penner's request for a hearing because he failed to file within 60 days after receiving notice of the denial of reconsideration. *See* 42 U.S.C. § 405(b) (1976). The order stated that good cause to extend the time of filing had not been shown. App. at A28. Mr. Penner through his counsel filed a time-

ly Request for Review with the Appeals Council on March 10, 1981. That request was denied on April 30, 1981.

On May 18, 1981, Mr. Penner through his counsel filed the instant action in the district court. On October 9, 1981, the Secretary filed a motion to dismiss arguing that the court lacked jurisdiction under 42 U.S.C. § 405(g) (1976 & Supp. IV 1980). The case was assigned to a magistrate who, after the filing of supplemental briefs, recommended that the Secretary's motion to dismiss be granted. The magistrate reasoned that dismissal was proper because Mr. Penner had been denied a hearing for failure to file a timely request and because Mr. Penner "does not raise a constitutional question" under *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). App. at A18. The district court accepted the magistrate's recommendation and dismissed the action in an order dated May 13, 1982. This appeal followed.

## II

In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court construed section 205(g) of the

---

other person who requested in writing that the initial determination be reexamined. *See* 20 C.F.R. §§ 404.910, .912, .915 (1980). The letter sent by Mr. Penner's counsel requesting reexamination of the denial of disability payments falls within these regulations and thus he should have received notice of the Secretary's December 13, 1979 decision. *See* 20 C.F.R. § 404.911 (1980).

**4.** Section 205(b) of the Act states in relevant part:

(b) The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Secretary which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of this case, in understandable language, setting forth a discussion of the evidence, and stating the Secretary's determination and the reason or reasons upon which it is based. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, husband, widower, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any

decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision. Any such request with respect to such a decision must be filed within sixty days after notice of such decision is received by the individual making such request.

42 U.S.C. § 405(b) (1976 & Supp. IV 1980).

**5.** In support of the request for a hearing, Mr. Penner's attorney sent to the SSA notes of a conversation between his associate and Mr. Penner. In that conversation Mr. Penner allegedly stated that he recalled receiving something in the mail but that he was "lost in time" and could not remember when he had received it. He further stated that he had done nothing in response to the notice because he did not know what to do and because he thought his attorney would take care of it. The associate concluded that Mr. Penner was totally disoriented as to time and demonstrated significant problem avoidance. App. at A34.

Act, 42 U.S.C. § 405(g) (1976 & Supp. IV 1980) to limit "judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" 430 U.S. at 108, 97 S.Ct. at 985. In *Sanders* the petitioner sought review of the Secretary's decision not to reopen a previously denied application for disability payments. Because a petition to reopen a prior final decision could be denied without a hearing, the Court held that the language of section 205(g) precluded judicial review of the Secretary's decision. *Id.* We have applied *Sanders* to preclude our review of the Secretary's dismissal of "new" claims that, because they were barred by *res judicata,* could be denied without a hearing. *Stauffer v. Califano,* 693 F.2d 306, 307 (3d Cir. 1982); *see, e.g., McGowen v. Harris,* 666 F.2d 60 (4th Cir.1981); *Davis v. Schweiker,* 665 F.2d 934 (9th Cir.1982). Similarly, in the instant action the Secretary was not required to grant a hearing because Mr. Penner's request for a hearing was untimely filed. 42 U.S.C. § 405(b) (1976 & Supp. IV 1980). Accordingly, we are precluded by the language of section 205(g) from relying on that provision for jurisdiction to review the Secretary's decision. *Watters v. Harris,* 656 F.2d 234, 238–39 (7th Cir.1980).

The Court in *Sanders* recognized, however, that section 205(g) did not act as a bar to resolution of constitutional questions raised by the claimant when seeking review of the Secretary's decision. 430 U.S. at 109,

97 S.Ct. at 986. "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Id.* Thus the Court held that judicial review was proper where the Secretary's decision to deny or discontinue social security benefits is challenged on constitutional grounds notwithstanding the absence of a prior administrative hearing.

In the instant case the district court held that Mr. Penner did not raise a constitutional issue before the district court and thus that his complaint should be dismissed. We do not agree. On December 28, 1981, the parties were asked to file supplemental briefs addressing the question of whether Mr. Penner was raising a constitutional issue within the meaning of *Sanders.* We read Mr. Penner's brief filed in response to that order, as well as his later filed "Objections to the Magistrate's Report and Recommendation," to have raised sufficiently a constitutional issue before the district court. Although not a model of clarity, Mr. Penner's brief alleged that he had been denied due process of law by not receiving effective notice of the Secretary's reconsideration determination. *See* Plaintiffs [sic] Supplemental Brief in Opposition to Defendant's Motion to Dismiss Plaintiffs [sic] Complaint, app. at A20, A21;[6] Objections to Magistrate's Report and Recommendation, app. at A8, A10.[7] Under the court

---

**6.** The district court's docket sheet does not contain an entry for this supplemental brief. App. at A1. The brief, however, was specifically referred to in the Magistrate's Report and Recommendation, app. at A13, A14, as well as in Mr. Penner's Objections to the Magistrate's Report and Recommendation, app. at A8, A11.

**7.** Much of the confusion over whether Mr. Penner properly raised a constitutional issue is due to language in his supplemental brief referring to *Matos v. Secretary of H.E.W.,* 581 F.2d 282, 287 n. 8 (1st Cir.1978). His brief stated:

Plaintiff, Herman Penner, does not raise a constitutional issue, in the present controversy, to the extent that he relies upon the Language of the First Circuit's holding in *Matos v. Secretary of HEW.* In *Matos,* the First Circuit stated:

"Matos' mental disability occurred in 1968. No evidence was presented that the onset of mental disability affected her eligibility for disability benefits and the ALJ determined that it did not. *However, a mental disability at that time could have affected her ability to pursue her Administrative Remedies.*" (Emphasis Supplied). (581 F.2d at p. 287).

Plaintiff does not interpret this language to indicate that the First Circuit raises the issue of Lack of Mental Capacity to constitutional proportions.

Plaintiff's Supplemental Brief, *supra,* app. at A20–A21.

In *Matos* the First Circuit reviewed the Secretary's dismissal of a claim for social security benefits under 42 U.S.C. § 423 (1976 & Supp. IV 1980). Without granting a hearing, the Secretary had dismissed the action on *res judicata* grounds based on the denial of two similar

decisions construing *Sanders,* that constitutional claim was sufficient to confer jurisdiction on the district courts to review the Secretary's denial of Mr. Penner's request for a hearing. *See, e.g., Stauffer,* 693 F.2d at 307; *Parker v. Califano,* 644 F.2d 1199, 1202–03 (6th Cir.1981); *Shrader v. Harris,* 631 F.2d 297, 299–300 (4th Cir.1980).

Accordingly we will reverse the district court's order and will remand with instructions that the district court direct the Secretary to make a determination, after considering such evidence as may be presented, whether mental incapacity prevented Mr. Penner from understanding and pursuing his administrative remedies. Once such a determination is made the district court will have a sufficient record upon which to decide what relief, if any, is consonant with due process and the Secretary's regulatory scheme. At the same time the Secretary will have ample opportunity to remedy any injustice that may have occurred in Mr. Penner's case. *See Parker v. Califano,* 644 F.2d at 1203.

GARTH, Circuit Judge, concurring.

I am in full accord with the analysis, discussion and result of the Majority Opinion. I note, however, that personally I would have ordered relief that was slightly greater than the relief afforded by the Majority in that I would have directly cured the result of the Secretary's breach of his own regulations by effectively ordering a hearing. The Secretary's conceded violation of his own regulations [1] would lead me to instruct the district court that on remand the Secretary should be directed to grant Penner's request for the out-of-time filing of Penner's motion requesting a hearing. Once that request was granted, the hearing would follow as a matter of course. *See* 42 U.S.C. § 405(b) (1976 and Supp. IV 1980) and the regulations 20 C.F.R. § 404.930 and 20 C.F.R. § 404.933 (1982).

There can be no dispute that the Secretary's failure to notify Penner's counsel, rather than Penner himself, has given rise to these extended proceedings. But for the Secretary's failure to observe his own regulations, Penner would have long since had the hearing he seeks. Thus, by ordering the Secretary to extend the time for Penner's motion, that hearing would now be available.

However, I cannot seriously quarrel with the remedy prescribed by the Majority which "will reverse the district court's order and will remand with instructions that the district court direct the Secretary to make a determination, after considering such evidence as may be presented, whether mental incapacity prevented Mr. Penner from

claims filed by the same claimant several years before. The court held that under *Sanders* it was without jurisdiction to review the Secretary's decision. "Since appellant never requested a hearing on her earlier two claims and did not receive a hearing on her third claim, the Act does not provide for judicial review." 581 F.2d at 285. The court did note that "[o]ther Circuits in pre-*Sanders* cases implied that mental illness might destroy the *res judicata* effect of a prior administrative determination." *Id.* at 287. Because no evidence existed in the record to support a claim of mental disability, however, the court did not decide whether such a claim would give it jurisdiction in that case. *Id.*

We construe Mr. Penner's brief as asserting that the *First Circuit* did not raise a constitutional issue in *Matos* when it discussed mental incapacity, *not* that Mr. Penner is not raising a constitutional argument in his action before this court. In the next paragraph of his brief, Mr. Penner states:

However, to the extent that the plaintiff is now forever foreclosed from presenting evidence as to his reduced mental capacity, therein he has been denied the right of a full and complete review of àll the evidence favorable to his case and *that in and of itself elevates this to a constitutional question.* Plaintiff's Supplemental Brief, *supra,* app. at A21 (emphasis added). We find that this statement properly raises a constitutional issue sufficient to provide this court with jurisdiction to decide whether the Secretary violated Mr. Penner's due process rights.

1. As the Majority Opinion correctly observes (*see* Maj.Op. at 259 & n. 3), the Secretary was required to give notice to Penner's *counsel* once the Secretary had been notified to do so. It is not contradicted that such notification was received by the Secretary, and indeed, the Secretary, at oral argument, conceded that his regulations in this respect had not been followed.

understanding and pursuing his administrative remedies." Maj.Op. at 261. The Majority has patterned its relief after the relief afforded in analogous cases, *see Parker v. Califano*, 644 F.2d 1199 (6th Cir.1981); *Schrader v. Harris*, 631 F.2d 297 (4th Cir.1980), and, more importantly, in accordance with the relief sought by Penner himself (*see* Penner's brief at 23).

Thus while I believe that ultimately Penner will receive the hearing to which he is entitled, I cannot fault the Majority for eschewing the shortcut to that remedy which I would prefer. Suffice it to say, that these protracted proceedings and Penner's expenditure of money, time and effort, to say nothing about the delay in possible future benefits, could have been readily avoided had the regulations which the Secretary had himself promulgated, by which he is bound, and which are designed to prevent the occurrence of this type of situation, been properly followed.