USCA1 Opinion

 

 May 12, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-2297 FELIX CRUZ-GONZALEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ___________________ Paul Ramos Morales, on brief for appellant. __________________ Guillermo Gil, United States Attorney, Maria Hortensia Rios, _____________ ____________________ Assistant United States Attorney, and Amy S. Knopf, Assistant _____________ Regional Counsel, Department of Health and Human Services, on brief for appellee. __________________ __________________ Per Curiam. Claimant, Felix Cruz-Gonzalez, ____________ appeals from a district court opinion affirming a decision by the Secretary of Health and Human Services (the "Secretary") denying benefits for part of the claimed period of disability. We affirm. I. Claimant filed his first application for disability insurance benefits on August 21, 1989, alleging an inability to work since December 13, 1987 on account of a nervous condition, asthma and headaches. The Secretary denied the application initially and, on March 29, 1990, on reconsideration. Claimant did not request a hearing. On December 18, 1990, claimant filed a second application for benefits, again alleging an inability to work since December 13, 1987 on account of a nervous condition, asthma, headaches and occasional back pain. The Secretary denied the application initially and on reconsideration. Claimant, with the assistance of counsel, requested a hearing before an Administrative Law Judge. The hearing was held on November 26, 1991. At the time of the hearing, claimant was fifty-five years of age and had a fifth grade education. He had worked in a cigar factory and as a gas station attendant. Claimant testified that he sufferred from bronchial asthma, for which he received respiratory therapy. He further testified that -2- he had a nervous condition which caused him to cry every night and for which he took medication and received treatment at the Mental Health Center in Cayey. Claimant alleged almost constant pain in his right arm and back, for which he took aspirin. Claimant testified that he could only sit for fifteen to twenty minutes at a time because of his back pain. He further stated that he could not push and pull with his arms, could not use his legs to operate any type of machinery and could "barely" squat or bend. Claimant reportedly spent most of his time sleeping or watching television. The ALJ presented the Vocational Expert ("VE") with a hypothetical that described a person who could only work in clean, well-ventilated environments, free of strong odors, dust and gas. The hypothetical also noted the need to avoid extreme temperatures and places of high relative humidity. The ALJ described a person with "moderate" mental limitations, moderate limitations in his ability to perform daily activities and capable of performing only non-skilled work. The ALJ further described this hypothetical person's deficiency in concentrating as "quite frequent." The VE testified that this hypothetical person could not perform the work that claimant had performed in the past as a gas station attendant, but that he could perform other jobs of a non-skilled nature. The ALJ asked the VE to further assume that the person could not push and pull with his right -3- (skillful) hand, that he could lift only light weight (a maximum of ten pounds), and that he needed to alternate positions. The VE testified that, taking these additional limitations into account, there were jobs in the local economy that a person with the hypothesized limitations could perform. Examples were wire cutter, stamper and wire worker. The ALJ referred to an independent psychiatric evaluation of claimant performed by Dr. Rafael Miguez Balseiro in February, 1991. Taking Dr. Miguez' diagnosis and description of claimant's limitations into account, the VE testified that claimant could perform the jobs he had identified. If claimant's own description of his condition and symptoms as expressed at the hearing were true, however, the VE testified that claimant would not be able to perform the identified jobs or any others in the national economy. On December 17, 1991, the ALJ issued a decision which divided claimant's disability claim into three distinct time periods: 1) from the claimed onset date (12/13/87) until the date of the Secretary's denial upon reconsideration of claimant's initial application for benefits (3/29/90); 2) from the date of the denial of the first application until claimant's fifty-fifth birthday (11/21/91); and 3) from claimant's fifty-fifth birthday until December 31, 1991 (the date through which claimant was insured). -4- With respect to the first period, the ALJ interpreted claimant's present application for benefits (alleging the same onset date and similar disabilities as his first application) as "an implied request for revision and reopening of the March 29, 1990 determination." Finding that there was neither good cause nor any other basis under the relevant regulations for reopening the prior case, the ALJ held that the March, 1990 determination "remains final and binding." Therefore, he considered only evidence of claimant's condition in the period after March 29, 1990. Focusing on the period after March, 1990, the ALJ determined that claimant had a combination of lung and mental conditions, but that he did not have "an impairment or combination of impairments listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulations No. 4." Although unable to perform his past relevant work, claimant was capable of light, clean, unskilled work. Considering claimant's age, education, work experience and exertional capacity as well as his nonexertional limitations, and using Rule 202.11 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, as a framework for decisionmaking, the ALJ found that "claimant was not disabled under the Social Security Act prior to November 21, 1991." Although the ALJ found claimant to be incapable of performing the full range of light work, he relied upon the VE's -5- testimony that "light unskilled clean jobs that allow the claimant to alternate positions when needed" existed in significant numbers in the national economy. On November 21, 1991, claimant turned fifty-five, and therefore was classified as of "advanced age" under the relevant Social Security regulations. Using Rule 202.02 of the Medical-Vocational Guidelines as a framework, the ALJ concluded that after claimant reached age 55, his functional limitations, together with other adverse vocational factors, "preclude[d] a vocational adjustment to other work that exists in significant numbers in the national economy." Therefore, the ALJ found claimant to be "disabled" under the Social Security Act since November 21, 1991. Following the Appeals Council's denial of his request for review of the ALJ's decision, claimant appealed to the district court. In an opinion and order dated October 13, 1993, the district court affirmed the Secretary's decision. The district court found that since claimant never appealed the March 29, 1990 decision denying his first application for benefits, "it became a final decision with res judicata effect." The Secretary's determination that there was no new and material evidence warranting a reopening of the case was not a reviewable decision. See Califano v. Sanders, 430 U.S. ___ ________ _______ 99 (1977). Therefore, the district court confined its review to the period between March 29, 1990 and November 21, 1991. -6- The district court accurately summarized the medical records. It found no support for claimant's contention that the ALJ had failed to properly consider the seriousness of his condition or that the hypothetical presented to the VE failed to accurately reflect claimant's impairments. Therefore, the district court affirmed the Secretary's denial of benefits for the period before November 21, 1991. II. On appeal, claimant argues that the Secretary's refusal to reopen its March 29, 1990 decision denying benefits is reviewable by the district court. He further contends that the ALJ's determination that claimant was not "disabled" under the Social Security Act before November 21, 1991, is not supported by substantial evidence. Specifically, claimant contends that the ALJ did not give sufficient weight to his subjective allegations and to the limitations imposed by claimant's environmental intolerances. "Absent a colorable constitutional claim not present here, a district court does not have jurisdiction to review the Secretary's discretionary decision not to reopen an earlier adjudication." Torres v. Secretary of Health and ______ _________________________ Human Services, 845 F.2d 1136, 1138 (1st Cir. 1988). See ______________ ___ Califano v. Sanders, 430 U.S. at 107-09; Colon v. Secretary ________ _______ _____ _________ of Health and Human Services, 877 F.2d 148, 153 (1st Cir. _____________________________ 1989); Dudley v. Secretary of Health and Human Services, 816 ______ ______________________________________ -7- F.2d 792, 795 (1st Cir. 1987); Dvareckas v. Secretary of _________ ____________ Health and Human Services, 804 F.2d 770, 771 (1st Cir. 1986); _________________________ Matos v. Secretary of Health and Human Services, 581 F.2d _____ ________________________________________ 282, 286 (1st Cir. 1978). Claimant's attempt to present a colorable constitutional claim is unavailing. He contends that the failure to reopen his case violates due process because there was no hearing held on his first request for benefits. Claimant does not contend that he was denied an opportunity for a hearing. The record indicates, instead, that in the denial of his request for reconsideration, claimant was informed of his right to request a hearing before an ALJ. Caimant failed to request such a hearing and the decision became final. Matos v. _____ Secretary of Health, Education and Welfare, 581 F.2d 282 _____________________________________________ presented similar facts. There, we applied Sanders as _______ follows: Prior to a final determination in the original claim, appellant could have secured a hearing and judicial review, if she had pursued all her remedies. The holding in Sanders provides, in _______ essence, that a claimant is not given a guarantee of a second hearing and court review if he waives the first opportunity. Matos, 581 F.2d at 285. _____ Claimant's reliance upon Shrader v. Harris, 631 F.2d 297 _______ ______ (4th Cir. 1980), is misplaced. There, the Fourth Circuit held that it would be a denial of due process to dismiss claimant's application on res judicata grounds where -8- claimant's initial claims were denied without a hearing and ___ "mental illness prevented [claimant] from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim." Id. at 302. There is ___ no support in the record for a finding that claimant's mental impairment rendered him incapable of understanding the procedure for obtaining an evidentiary hearing after denial of his initial claim. We conclude that claimant's constitutional claim is not colorable and that, therefore, the district court correctly determined that it lacked jurisdiction to review the Secretary's failure to reopen its March 29, 1990 decision. Claimant also argues that the Secretary's decision that he was not disabled between March 30, 1990 and November 21, 1991 was unsupported by substantial evidence. We disagree for the reasons articulated by the district court. We add only the following comments. The VE testified that "if we took into consideration the claimant's subjective allegations, he would not be qualified to perform in a sustained manner the job examples I have indicated and or any others in our national economy." Therefore, in determining that claimant was not disabled, the ALJ implicitly discredited claimant's subjective allegations. "The credibility determination by the ALJ who observed the claimant, evaluated his demeanor, and considered how that -9- testimony fit in with the rest of the evidence is entitled to deference,. . ." Frustaglia v. Secretary of Health and Human __________ _____________________________ Services, 829 F.2d 192, 195 (1st Cir. 1987). ________ At his hearing, claimant described his arm and back pain, including the location and frequency of the pain, in the following terms. He testified that he experienced "strong" pains in his back and right arm "almost all the time." The pain, allegedly, prevented him from pushing and pulling with his arms and from using his legs to operate any type of machinery and rendered him "barely" able to squat or bend. He alleged that he spent most of his time sleeping. Claimant also testified that he suffered from constant asthma, requiring medication that left him anxious and nervous. The ALJ credited claimant's subjective allegations of pain to the extent that he found him to have "exertional limitations with his skillful hand to push and pull" and to require a job that allowed him to alternate positions. There is substantial evidence in the record to support the ALJ's determination that claimant was not rendered "disabled" by his pain or other afflictions. In August, 1991, Dr. A.M. Marxauch completed a Residual Physical Functional Capacity Assessment ("physical RFC") in which he concluded that claimant had no exertional, postural or manipulative limitations. Another physical RFC, prepared by Dr. Gilberto Fragoso in May, 1991, reached the same -10- conclusions. Notes from claimant's out-patient visits to a local mental health center indicate that he reported in January, 1990 that he was "functioning adequately with medications" and was keeping himself entertained by spending his days at a home for senior citizens. Dr. Miguez examined claimant in February, 1991, and reported that claimant's posture was "unremarkable" and that "no movement disorders are observed." He also concluded that claimant, although depressed, was "in good contact with reality," coherent, relevant and functioning at "a regular intellectual level." An examining pulmonologist, Dr. Harold Pola, reported in April, 1991 that claimant's asthma was "well controlled" by his medication and that, by use of an inhaler, he could avoid visits to the local health center. Based upon the above evidence, we conclude that there is substantial support in the record for the ALJ's decision to discredit claimant's subjective allegations of the disabling extent of his medical conditions. Claimant argues on appeal that the environmental restrictions that his asthma placed on his ability to work should have resulted in a finding that he was disabled prior to November 21, 1991. Claimant relies upon the following comment in Social Security Ruling No. 85-15: Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments -11- are entirely free of irritants, pollutants, and other potentially damaging conditions. The physical RFC prepared by Dr. Fragoso concluded that claimant should "avoid all exposure [to] fumes, odors, dusts, gases poor ventilation, etc." The RFC completed by Dr. Marxauch, however, was less stringent, finding that claimant should "avoid even moderate exposure" to those irritants. Dr. Pola reported that claimant complained that his asthmatic episodes were worsened by exposure to fuel, fumes, dust, smoke and cold temperature. The doctor recommended that claimant "avoid exposure" to those substances. At the hearing, the ALJ presented the VE with a hypothetical that included the following environmental restrictions: this person can only work at places where there is a clean environment, free of strong odors, dust, gas and in places where ventilation is adequate, . . . should avoid extreme temperatures, cold or hot and in addition the person should avoid humid places and places where the relative humidity is high. Considering these and other non-environmental restrictions, the VE testified that there were at least three jobs existing in the local economy that claimant could perform, all within the electronic and electric products manufacturing industry: wire cutter, stamper and wire worker. The VE's testimony was based upon a hypothetical that "correspond[s] to conclusions supported by . . . medical authorities," Arocho v. Secretary ______ _________ -12- of Health and Human Services, 670 F.2d 374, 375 (1st Cir. _____________________________ 1982). Therefore, his testimony was relevant and supported the Secretary's finding that claimant was not disabled prior to November 21, 1991. Accordingly, we affirm the district court's judgment affirming the Secretary's denial of benefits for the period prior to November 21, 1991. -13-