Cleto RIVERA, Jr., Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent.

No. 99–71278.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 2001

Filed Aug. 28, 2001

Willie M.J. Curtis, Dean, Melissa Berren, Chris Jenks, Janine Letellier, and Ernest Skinner, Law Students, The University of Arizona, James E. Rogers College of Law, Pro Bono Appellate Project, Tucson, Arizona, Pro Bono, for the petitioner.

Kelli Johnson, Esq., Railroad Retirement Board, Chicago, Illinois, for the respondent.

Before: MAGILL,* McKEOWN, and FISHER, Circuit Judges.

MAGILL, Circuit Judge:

The Railroad Retirement Board's Bureau of Hearings and Appeals upheld the termination of Appellant Cleto Rivera's disabled child's annuity under the Railroad Retirement Act (the "Act"). The Railroad Retirement Board (the "Board") dismissed Rivera's subsequent appeal as untimely. We dismiss for lack of jurisdiction.

## I.

The government began providing Rivera with a disabled child's annuity effective July 1, 1985. The Act provides an annuity to a surviving disabled child of a railroad

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

employee covered by the Act. 45 U.S.C. § 231a(d)(1)(iii) (2000). A survivor receives an annuity if he becomes disabled before the age of twenty-two and is unable to engage in any regular employment. *Id.; id.* at § 231a(d)(3). Rivera, the son of a deceased railroad worker, suffers from multiple medical impairments, including cerebral palsy, which began before he turned twenty-two years old.

In October 1994, the Board's Bureau of Disability and Medicare Operations Director (the "Director") informed Rivera that, effective January 1, 1990, he no longer was eligible for an annuity because his job with the Oxnard School District constituted "substantial gainful activity." 20 C.F.R. § 220.140 (2001) ("If the claimant is able to engage in substantial gainful activity, the Board will find that the claimant is not disabled for any regular employment under the ... Act."). The Oxnard School District had hired Rivera as a part-time food service worker in 1984. Rivera asserts that he was given preferential treatment in the hiring process and is unable to perform many of his job's tasks, such as lifting heavy objects and standing for long periods of time.

After the Director rejected Rivera's request for reconsideration, Rivera appealed to the Board's Bureau of Hearings and Appeals. On May 15, 1997, a Bureau of Hearings and Appeals Hearings Officer (the "Hearings Officer") held that although Oxnard partially subsidized Rivera's job responsibilities, Rivera's entitlement to an annuity ended on March 31, 1991. The Hearings Officer sent copies of her decision and the Board's appellate procedures to Rivera and his attorney, noting that Rivera had sixty days from May 15 to file his appeal with the Board.

On July 14, 1997, the deadline for filing his appeal, Rivera sent the Board a letter requesting additional time to file his appeal. Rivera claimed that he needed more time because he: (1) had problems with his employment, including a sexual harassment claim; (2) was unable "to concentrate on the appeal process until very recently"; and (3) lived about thirty miles from his attorney's office and was unable to get transportation to her office until July 14, 1997. The Board eventually received Rivera's appeal on July 24, 1997. In his appeal, Rivera stated that he intended to file additional evidence with the Board concerning "[t]he true percentage of subsidization Mr. Rivera receives and his actual income."

On October 3, 1997, the Secretary to the Board sent a letter to Rivera, advising him that the Board "will hold open the appeal for 60 days from the date of this letter for the submission of evidence. In the absence of any such submission, the Board will proceed to issue a decision on the record before it." The Secretary also quoted § 260.9(d) of the Board's regulations, which relates to the submission of additional evidence, and informed Rivera that "admission of new evidence on appeal to the Board is discretionary with the Board, and you should explain why submission of such evidence was not possible at an earlier stage of adjudication." Rivera did not supply the Board with additional evidence.

On November 19, 1998, the Board dismissed Rivera's appeal as untimely, with one member dissenting. The Board noted that its regulations require a claimant filing a late appeal to show that circumstances beyond his control caused the late filing, and concluded that "the reasons presented by Mr. Rivera for late filing do not constitute good cause." *See* 20 C.F.R. § 260.9(c) ("If in the judgment of the Board the reasons given establish that the appellant had good cause for not filing the final appeal form within the time prescribed, the Board will consider the appeal

to have been filed in a timely manner."); *id.* at § 260.3(d) (listing circumstances where good cause may exist). The dissent stated:

> [T]he Board's agreement to hold the record open was an implicit waiver of the late filing. It does not make sense to make an offer to accept additional evidence and then to dismiss the appeal for a procedural deficiency. Moreover, the decision of the majority seems particularly unbalanced and unfair, since it refuses to consider the merits of Mr. Rivera's appeal for missing the filing deadline by 10 days in an opinion issued more than 12 months after that filing.

In a December 8, 1998 letter, Rivera requested reconsideration of the Board's decision, stating that his attorney was the cause of his untimely appeal. The Board rejected Rivera's request, and this appeal ensued.

## II.

The Board argues that we lack jurisdiction to review its November 19, 1998 decision. The Supreme Court has instructed lower courts to resolve jurisdictional issues before reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (rejecting the doctrine of "hypothetical jurisdiction"); *accord United States v. Sumner,* 226 F.3d 1005, 1014 (9th Cir. 2000). The *Steel* Court explained that " '[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " 523 U.S. at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, we turn to examine whether we have jurisdiction to entertain Rivera's appeal.

Section 231g of the Act incorporates the judicial review provisions of the Railroad Unemployment Insurance Act, which provides: "Any claimant ... may, only after all administrative remedies within the Board will have been availed of and exhausted, obtain a review of any final decision of the Board ... in the United States court of appeals for the circuit in which the claimant ... resides...." 45 U.S.C. § 355(f) (2000). Thus, to qualify for review in this court, Rivera must show that the Board's dismissal of his claim constitutes a "final decision of the Board". We hold that it does not, because it was not a "final decision of the Board" on the merits of Rivera's claim.

The Board's regulations provide for a series of administrative steps a claimant may take to challenge an adverse decision by the Director. First, the claimant has sixty days after the date on which notice of the initial decision is mailed to him to request reconsideration. 20 C.F.R. § 260.3(a)-(b). Second, if the Director affirms his initial decision, then the claimant has sixty days to file an appeal with the Bureau of Hearings and Appeals. *Id.* at § 260.5(a)-(b). Finally, a claimant who wishes to challenge an adverse Bureau of Hearings and Appeals decision must file an appeal "with the Board within 60 days from the date upon which notice of the decision of the hearings officer is mailed to the appellant." *Id.* at § 260.9(b). If the claimant fails to file a timely appeal at any stage of the process, the prior decision becomes final. *See id.* at § 261.1(b) (defining "final decision" to mean "any decision of the type listed in § 260.1 of this chapter where the time limits for review as set forth in part 260 of this chapter or in the Railroad Retirement Act have expired").

In this case, the Hearings Officer issued her decision on May 15, 1997, giving Rivera until July 14 to file an appeal with the

Board. When Rivera failed to appeal to the Board by July 14, the Hearings Officer's decision became final and Rivera lost his right to further review. *See id.* at § 260.9(c) ("The right to further review of a decision of a hearings officer shall be forfeited unless formal final appeal is filed in the manner and within the time prescribed in § 260.9(b)."). Thus, the Board's dismissal of Rivera's claim is not a "final decision" on the merits of that claim.

We find support for our conclusion in case law analyzing the ability to appeal an administrative decision not to reopen a "final decision." In this case, Rivera's late appeal requested an extension of time. Since the Hearings Officer's decision had become final, Rivera's request essentially asked the Board to reopen a "final decision." *See Matlock v. Sullivan,* 908 F.2d 492, 494 (9th Cir.1990) (stating that "a claimant's request to extend the period for filing a claim for judicial review [is] indistinguishable from [a] request to reopen a disability claim").

■ The Supreme Court, interpreting the Social Security Act, has held that courts do not have jurisdiction to review an agency decision not to reopen a "final decision." *Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[1] In *Sanders,* the Court examined a claim for disability benefits. *Id.* at 100, 97 S.Ct. 980. In 1964, an administrative law judge (the "ALJ") denied the claimant's request for benefits. *Id.* at 102, 97 S.Ct. 980. The claimant filed essentially the same request in 1973, but the ALJ refused to reopen the 1964 decision. *Id.* at 102–03, 97 S.Ct. 980. The claimant then sought review in federal district court. *Id.* at 103, 97 S.Ct. 980.

The *Sanders* Court held that the district court did not have jurisdiction to review the ALJ's 1973 decision under the Social Security Act, which provided: " 'Any individual, after any final decision of the Secretary … may obtain a review of such decision by a civil action commenced within sixty days….' " *Id.* at 108, 97 S.Ct. 980 (quoting 42 U.S.C. § 405(g) (1970 Supp. V)). The Court pointed out that "an interpretation that would allow a claimant judicial review simply by filing-and being denied-a petition to reopen his claim would frustrate the congressional purpose … to impose a 60–day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." *Id.*

In *Matlock,* we applied *Sanders* in determining whether the district court had jurisdiction to review the Social Security Appeals Council's (the "Appeals Council") refusal to consider an untimely request for review. 908 F.2d at 493. This court noted that it previously had held "that a claimant's request to extend the period for filing a claim for judicial review was indistinguishable from the request to reopen a disability claim at issue in *Sanders* " and that the phrase " 'final decision' refers to a final decision on the merits." *Id.* at 494 (citing *Peterson v. Califano,* 631 F.2d 628, 630 (9th Cir.1980)). Accordingly, *Matlock* held that the district court did not have jurisdiction to review the Appeals Council's decision not to review the untimely appeal. *Id.; accord Harper v. Sec'y of Health & Human Servs.,* 978 F.2d 260, 262 (6th Cir.1992); *Bacon v. Sullivan,* 969 F.2d 1517, 1520–21 (3d Cir.1992); *Harper v. Bowen,* 813 F.2d 737, 742–43 (5th Cir. 1987); *Adams v. Heckler,* 799 F.2d 131, 133 (4th Cir.1986); *Smith v. Heckler,* 761

---

1. It is "accepted practice" to use social security cases as precedent for cases arising under the Act. *Harris v. United States R.R. Ret. Bd.,* 198 F.3d 139, 142 n. 4 (4th Cir.1999); *Abbruzzese v. R.R. Ret. Bd.,* 63 F.3d 972, 974 n. 3

(10th Cir.1995) (internal quotation marks and citation omitted); *see also Estes v. R.R. Ret. Bd.,* 776 F.2d 1436, 1438 (9th Cir.1985) (stating that social security cases are "persuasive precedent" in cases arising under the Act).

F.2d 516, 518–19 (8th Cir.1985); *White v. Schweiker*, 725 F.2d 91, 93–94 (10th Cir. 1984); *Dietsch v. Schweiker*, 700 F.2d 865, 867 (2d Cir.1983); *Watters v. Harris*, 656 F.2d 234, 238–39 (7th Cir.1980); *Rios v. Sec'y of Health, Educ. & Welfare*, 614 F.2d 25, 26 (1st Cir.1980). *But see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Furthermore, the majority of circuits addressing the issue have held that they do not have jurisdiction to review a Board decision not to reopen a claimant's application for benefits. *See Harris v. United States R.R. Ret. Bd.*, 198 F.3d 139, 142 (4th Cir.1999); *Abbruzzese v. R.R. Ret. Bd.*, 63 F.3d 972, 974 (10th Cir.1995); *Gutierrez v. R.R. Ret. Bd.*, 918 F.2d 567, 569–70 (6th Cir.1990); *Steebe v. United States R.R. Ret. Bd.*, 708 F.2d 250, 254–55 (7th Cir.1983).[2] *But see Sones v. United States R.R. Ret. Bd.*, 933 F.2d 636, 638 (8th Cir. 1991) (finding *Steebe* factually distinguishable in holding that it had jurisdiction to review the Board's decision not to reopen for abuse of discretion); *Szostak v. R.R. Ret. Bd.*, 370 F.2d 253, 254–55 (2d Cir. 1966) (holding that the Administrative Procedure Act or the common law provides jurisdiction to review a Board decision not to reopen for abuse of discretion).[3] In *Harris*, for instance, the claimant failed to appeal the Director's denial of his claim to the Bureau of Hearings and Appeals with-

in sixty days. 198 F.3d at 140. The Hearings Officer dismissed the appeal as untimely without good cause, and the Board affirmed. *Id.* The Fourth Circuit stated that when the claimant "failed to file a timely appeal within sixty days of the Board's decision denying her application on reconsideration, the decision denying benefits became final." *Id.* Finding *Sanders* "to be applicable to a Board decision not to reopen a case," the *Harris* court held that the Board's decision not to reopen was not a "final decision" under § 355(c). *Id.* at 141–42. Thus, the court held that it did not have jurisdiction to examine the claimant's argument that the Board erred in holding that she did not have "good cause" for filing an untimely appeal. *Id.* at 142.

In this case, the Hearings Officer issued her decision on May 15, 1997. Rivera did not file his appeal with the Board until July 24, 1997, more than sixty days after the Hearings Officer's decision. Just as in *Matlock*, the Board's dismissal of Rivera's appeal as untimely is not a "final decision" under § 355(c) because it did not decide the case "on the merits." 908 F.2d at 494. Thus, we agree with the Fourth Circuit's view in *Harris* and hold that the Board's discretionary decision not to extend the period for filing a claim for judicial review was not a "final decision of the Board" and,

---

**2.** Our sister circuits have expressed differing rationales for holding that they did not have jurisdiction to review a Board decision not to reopen a claimant's application. The Sixth Circuit assumed that the Board's refusal to allow the claimant to file an untimely appeal constituted a "final decision," instead resting its conclusion on the claimant's failure to exhaust his administrative remedies. *See Gutierrez*, 918 F.2d at 570. On the other hand, the Fourth, Seventh, and Tenth Circuits appear to rely on the lack of a "final decision" as support for their holdings. *See Harris*, 198 F.3d at 142; *Abbruzzese*, 63 F.3d at 974; *Steebe*, 708 F.2d at 254–55.

**3.** In *Clifford v. United States Railroad Retirement Board*, 3 F.3d 536, 538 & n. 5 (1st Cir.1993), the First Circuit assumed it had jurisdiction over the Board's refusal to reopen a case, stating: "It is settled that an appellate court, confronted by a difficult jurisdictional question[,] may forgo its resolution if the merits of the appeal are, as here, straightforward and easily resolved in favor of the party to whose benefit the objection to jurisdiction would redound." However, the Supreme Court since has rejected the doctrine of "hypothetical jurisdiction" used by *Clifford*. *See Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003.

therefore, is not subject to review by this court.

█ Rivera, however, contends that the Board implicitly waived its right to dismiss his appeal as untimely. In his appellate filing with the Board, Rivera stated that he intended to submit additional evidence concerning "[t]he true percentage of subsidization Mr. Rivera receives and his actual income." On October 3, 1997, the Board advised Rivera that it "will hold open the appeal for 60 days from the date of this letter for the submission of evidence. In the absence of any such submission, the Board will proceed to issue a decision on the record before it." Rivera argues that this letter constitutes an implicit waiver of the sixty-day limitations period.

In arguing that the Board's October 3 letter implicitly waived the sixty-day limitations period, Rivera relies on *Funderburk v. Califano*, 432 F.Supp. 657 (W.D.N.C.1977), and *Sipple v. Califano*, 455 F.Supp. 528 (S.D.W.Va.1978). In *Funderburk*, the district court examined the claimant's argument that the Secretary of the Department of Health, Education and Welfare implicitly waived an administrative regulation that required claimants to file appeals of final administrative decisions in federal district court within sixty days of receipt of the decision. 432 F.Supp. at 658. On September 14, 1976, the Appeals Council rejected the claimant's appeal. *Id.* The claimant then asked the Appeals Council to hold his file open for submission of additional evidence. *Id.* The Appeals Council responded: " 'The Appeals Council exercises the jurisdiction to consider the question of reopening and revision of the administrative law judge's decision. . . . [T]he Council will carefully consider any additional evidence or information which you may furnish.' " *Id.* The claimant's counsel eventually submitted additional evidence, causing the Appeals Council to respond in a January 13, 1977

letter: " 'The Appeals Council has carefully considered your [additional evidence] but has concluded that modification of action previously taken is not warranted. . . . Accordingly, the administrative law judge's decision dated July 30, 1976, stands as the final decision of the Secretary in this case.' " *Id.* The claimant filed suit in district court on February 25, 1977. *Id.*

The issue before the district court was whether the Appeals Council's January 13 letter implicitly waived the sixty-day limitations period. The court held:

> The Council's January 13, 1977, letter demonstrates that the Council did reopen its September 14, 1976, decision when it states that the Council "carefully considered" the additional materials submitted, concluded that modification of the prior decision was not warranted, and held that the administrative law judge's decision dated July 30, 1976, "stands as the final decision of the Secretary in this case" . . . rather than simply stating that the Council refused to reopen its September 14, 1976, decision.

*Id.* at 658–59. Alternatively, the court held that even had the Appeals Council refused to reopen its September 14 decision, the plaintiff still would have been entitled to bring his suit in district court because

> [t]he Secretary should not be entitled to assert the [limitations period] here where the Appeals Council invited plaintiff to submit additional evidence three days before the time limit for filing suit expired, forcing plaintiff to choose whether to pursue additional administrative channels or to institute a possibly needless civil action.

*Id.* at 659.

In *Sipple*, a West Virginia district court addressed a similar issue, where the Appeals Council sent the claimant a January 3, 1977 letter upholding an ALJ's denial of

disability benefits. 455 F.Supp. at 529. In letters dated January 6 and February 16, the claimant asked the Appeals Council to reopen his case and reconsider its previous denial, or extend the time beyond sixty days for instituting suit in district court. *Id.* On April 5, the Appeals Council wrote that " 'with respect to your statements relative to the submission of additional documentation, the Council will carefully consider any further evidence which you may wish to submit and take such further action as may be warranted.' " *Id.* The letter also indicated that the Appeals Council found no basis to modify its January 3 decision, but extended the deadline to file an action in district court to April 15. *Id.* The claimant, who did not submit new evidence after receiving the Appeals Council's April 5 letter, ultimately filed suit in district court on June 2. *Id.* at 530.

Similar to *Funderburk,* the issue before the district court was whether the Appeals Council's April 5 letter implicitly waived the sixty-day limitations period. The court stated: "As in the *Funderburk* case, the Appeals Council in this case invited the submission of additional documentation and informed plaintiff that the Council would 'carefully consider any further evidence that you may wish to submit and will take such further action as may be warranted.' " *Id.* Quoting *Funderburk* 's statement that " 'the Secretary should not be entitled to assert the [limitations period] here where the Appeals Council invited plaintiff to submit additional evidence three days before the time limit for filing suit expired, forcing plaintiff to choose whether to pursue additional administrative channels or to institute a possibly needless civil action,' " the court held that "the Secretary may not … now assert that the sixty day limitation period bars plaintiff's action." *Id.* (quoting *Funderburk,* 432 F.Supp. at 659).

Several circuit courts have analyzed similar situations to those presented in *Funderburk* and *Sipple. See, e.g., Banta v. Sullivan,* 925 F.2d 343 (9th Cir.1991); *Triplett v. Heckler,* 767 F.2d 210 (5th Cir. 1985); *Friddle v. Heckler,* 720 F.2d 24 (8th Cir.1983) (per curiam); *Biron v. Harris,* 668 F.2d 259 (6th Cir.1982) (per curiam). In *Banta,* the Appeals Council sent the claimant a February 9, 1988 letter that denied her request for review of an adverse ALJ decision and advised her that she could seek judicial review within sixty days. 925 F.2d at 344. On April 6, the claimant sent a letter to the Appeals Council requesting an extension of time in which to file her action in district court. *Id.* The Appeals Council responded on May 5, stating " 'that there is no basis for vacating its previous action,' and that 'the hearing decision stands as the final decision of the Secretary.' " *Id.* The claimant filed suit in district court on June 30. *Id.*

Relying on *Funderburk,* the claimant argued that the Appeals Council's May 5 letter constituted a reopening of her case and a "final decision" that renewed the sixty-day period for filing her district court action. *Id.* This court, however, stated that unlike *Funderburk,* the Appeals Council in *Banta* "neither invited submission of additional materials nor enticed her to forgo filing a complaint in district court." *Id.* Relying on *Triplett, Friddle,* and *Biron,* we noted:

> A rule allowing claimants to extend their time for filing in district court simply by submitting additional materials which the Appeals Council considers when determining whether to reopen a case would frustrate Congress's intent "to limit judicial review to the original decision denying benefits [and thereby] forestall repetitive or belated litigation of stale eligibility claims."

*Id.* at 345 (alteration in original) (quoting *Sanders,* 430 U.S. at 108, 97 S.Ct. 980); *accord Triplett,* 767 F.2d at 213 ("A claimant could otherwise indefinitely delay a 'final decision' simply by bombarding the Council with a series of 'new' pieces of evidence. [The claimant] thus had to show more than that the Secretary acknowledged receipt of additional material and found it wanting.").

The factual scenario presented here is more similar to the scenarios analyzed in *Funderburk* and *Sipple* than in *Banta.* Here, like *Funderburk* and *Sipple,* the Board sent a letter to Rivera discussing a claimant's ability to submit additional evidence. In *Banta,* by contrast, the claimant submitted additional evidence without receiving any notice from the Appeals Council that it might examine the new evidence. Therefore, the Board, like the Appeals Council in *Funderburk* and *Sipple,* may have provided Rivera with a stronger expectation that it would analyze any newly submitted evidence and issue a decision on the merits than the claimant had in *Banta.*

Nevertheless, we hold that the Board did not implicitly waive its right to dismiss Rivera's appeal as untimely. The Board's October 3 letter informed Rivera that it would "hold open the appeal for 60 days from the date of this letter for the submission of evidence. In the absence of any such submission, the Board will proceed to issue a decision on the record before it." Rivera never actually submitted additional evidence. Hence, the Board simply "proceed[ed] to issue a decision on the record before it." As the record disclosed Rivera's failure to appeal the Hearings Officer's decision within sixty days, the Board's ultimate decision dismissing the appeal as untimely is consistent with its

October 3 letter. Thus, although the Board's letter arguably agreed to waive the timeliness requirement if Rivera submitted additional evidence, Rivera's failure to do so permitted the Board to dismiss the appeal as untimely, without reaching the merits of his claim. Accordingly, this case is distinguishable from *Funderburk,* where the claimant actually submitted additional evidence after receiving the Appeals Council's letter informing him that it would consider new evidence.[4]

It is true that in *Sipple* the claimant did not submit new evidence after the Appeals Council suggested that he could do so. But in *Sipple,* the Appeals Council informed the claimant that it would consider new evidence while allowing him only ten days to institute suit in district court. Thus, the *Sipple* court felt that the Appeals Council forced the claimant " 'to choose whether to pursue additional administrative channels or to institute a possibly needless civil action.' " 455 F.Supp. at 530 (quoting *Funderburk,* 432 F.Supp. at 659). In other words, the Appeals Council placed the claimant in a "Catch–22"; submit new evidence to the Appeals Council at the risk of missing the deadline to file suit in district court or appeal to the district court immediately, thereby losing the ability to have new evidence considered. The Board did not place Rivera in such a situation. Rivera's only option was to submit additional evidence to the Board, as he did not face an obstacle such as the need to comply with a rapidly approaching filing deadline in another court. Therefore, we think that *Sipple* is distinguishable from the situation presented here.

██ Accordingly, we do not have jurisdiction to examine Rivera's arguments that the Board acted arbitrarily and capri-

4. Because we find *Funderburk* and *Sipple* distinguishable, we need not express a view on the correctness of their holdings.

**1014**

ciously in dismissing Rivera's claim as untimely and constructively violated its regulations by: (1) allegedly not considering Rivera's explanation for his untimely filing with the Board; and (2) not reaching a decision within time periods set forth in its regulations. *See Thibodeaux v. Bowen,* 819 F.2d 76, 80 (5th Cir.1987) ("[A] federal court does not have jurisdiction to review the non-constitutional bases of the Secretary's decision on a petition to reopen. Such a decision is not a final decision within the meaning of section 205(g) of the Social Security Act."). However, Rivera's reply brief argues that the Board violated his due process rights by taking over four years to reach its decision. This court has recognized that although "[a] decision not to reopen a prior, final benefits decision is discretionary and ordinarily does not constitute a final decision[,] ... *Sanders* ... recognized an exception 'where the Secretary's denial of a petition to reopen is challenged on constitutional grounds.'" *Udd v. Massanari,* 245 F.3d 1096, 1098–99 (9th Cir.2001) (quoting *Sanders,* 430 U.S. at 109, 97 S.Ct. 980). Thus, under certain circumstances, courts may waive a litigant's failure to challenge a "final decision" with regard to a constitutional claim. However, since Rivera does not raise a due process argument in his opening brief, the argument is waived. *See United States v. Reyes–Platero,* 224 F.3d 1112, 1115 (9th Cir.2000), *cert. denied,* 531 U.S. 1117, 121 S.Ct. 868, 148 L.Ed.2d 780 (2001).

### III.

We DISMISS Rivera's appeal because we do not have jurisdiction to review the Board's dismissal of Rivera's application for benefits.