

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2004

# Cunningham v. RRRB

Precedential or Non-Precedential: Precedential

Docket No. 02-2866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Cunningham v. RRRB" (2004). *2004 Decisions.* Paper 19.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/19

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-2866

———

JANET BELCZYK CUNNINGHAM

Petitioner

v.

RAILROAD RETIREMENT BOARD

———

On Petition to Review
a Decision of the
Railroad Retirement Board
(Agency No. 02-AP-0035

———

Argued September 28, 2004

Before: RENDELL, FUENTES, and SMITH, Circuit Judges.

(Filed: December 15, 2004 )

Michael A. Pavlick
Jamie Bishop
Meghan L. Daugherty (Argued)
Kirkpatrick & Lockhart, LLP
535 Smithfield Street
Pittsburgh, PA 15203

ATTORNEYS FOR PETITIONER

Steven A. Bartholow
Michael C. Litt (Argued)

Railroad Retirement Board
844 North Rush Street
Chicago, IL 60611

ATTORNEYS FOR RESPONDENT

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Petitioner Janet B. Cunningham appeals a decision of the Railroad Retirement Board ("RRB") denying her motion to reopen her claim for unemployment and sickness insurance benefits following her failure to pursue a timely administrative appeal of a partial denial of benefits. The novel issue for this Court is whether we may review a decision of the RRB refusing to reopen a prior claim for benefits after the time for administrative appeal has expired. Because a decision of the RRB refusing to reopen a prior claim is not a final decision within the meaning of 45 U.S.C. § 355(f), which governs judicial review of decisions of the RRB, we conclude that we have no jurisdiction to review the RRB's decision. Accordingly, we will dismiss the petition.

## I. BACKGROUND

After being laid off by Conrail, Cunningham commenced an action *pro se* with the RRB seeking unemployment and sickness insurance benefits under the Railroad Retirement Act ("RRA") and the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 231 *et. seq.*[1] An adjudicating officer awarded Cunningham

---

[1]Cunningham sought sickness insurance benefits for complications arising from her pregnancy, which led to her hospitalization and treatment for severe heart disorder. In addition, Cunningham sought unemployment benefits after being laid off

unemployment benefits for the period May 30 through July 26, 1999, but denied unemployment benefits thereafter based on her unavailability for work. Cunningham was also awarded sickness insurance benefits for the period November 19, 1999 through April 20, 2000, but was denied sickness insurance benefits for the period prior to November 19, 1999, based on lack of proof of infirmity. Seeking relief from the denial of these benefits and pursuant to RRB administrative procedures, Cunningham filed two requests for reconsideration with the adjudicating officer, both of which were denied on March 7, 2000.

Cunningham thereafter filed an appeal of the reconsideration decisions to the RRB's Bureau of Hearings and Appeals (the "Bureau"). On October 2, 2000, the Bureau denied Cunningham's appeal and affirmed the adjudicating officer's denial of benefits. The Bureau also informed Petitioner that she had 60 days in which to appeal the Bureau's decision to the three-member board (the "Board") that heads the RRB.

Cunningham did not file an appeal to the Board within the 60-day period and, accordingly, the Bureau's decision became the final decision of the RRB. *See* 45 U.S.C. § 355(d); *see also* 20 C.F.R. § 320.39. On May 29, 2001, well after the time to appeal had expired, Cunningham sent a letter to Robert A. Scardelletti, her union president, requesting his assistance in obtaining unemployment benefits. That same day, Scardelletti wrote a letter to V.M. Speakman, Jr., the labor representative on the Board, forwarding Cunningham's letter and asking for assistance on her behalf. A few weeks later, Speakman replied to Scardelletti, explaining that the time to appeal had long expired because Cunningham had not pursued her right to appeal within the 60-day period.[2]

_____

from Conrail.

[2]In her brief to this Court, Cunningham asserts that the three letters discussed above–the Cunningham letter, the Scardelletti letter, and the Speakman letter–are not properly before this Court. We note that the letters are part of the Certified Administrative Record filed with this Court on August 1, 2002, pursuant to Federal

3

On January 21, 2002, some 14 months after the expiration of the 60-day appeals period, Cunningham filed an appeal with the Board, which was treated as a request to reopen her claim in view of the Bureau's October 2, 2000 final decision. Still acting *pro se*, Cunningham argued that good cause existed to waive the 60-day appeal period because she was prevented from timely appealing the Bureau's decision within the prescribed period because of her medical condition, her separation from her husband, and because she had no one to act on her behalf during that period.[3] On April 23, 2002, the Board, in a brief decision, denied her request to reopen, finding that she had failed to meet the good cause standard necessary to waive the time requirement. The Board relied on the May 29, 2001 letter Cunningham wrote to her union requesting assistance as evidence that she could have filed an appeal on that date, and that her subsequent delay of another eight months was unexplained.

Thereafter, Cunningham filed a petition for review with this Court arguing that she was entitled to benefits under the RUIA and that the Board's determination that she had failed to show good cause to reopen her case following her untimely appeal was not supported by substantial evidence in the record.

## II. JURISDICTION

The parties dispute whether this Court has jurisdiction over Cunningham's petition for review. We must resolve the threshold jurisdictional issue before reaching the merits of Cunningham's petition. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Soc'y Hill Towers Owners' Ass'n v. Rendell*,

Rules of Appellate Procedure 16 and 17. However, because we decide this case on jurisdictional grounds and do not rely on the letters in making our determination, we need not decide whether the letters are properly before us.

[3]Pursuant to 20 C.F.R. § 320.39, the Board may waive the 60-day period if in the judgment of the Board "the reasons given establish that the party has *good cause* for not filing the appeal form within the time limit prescribed." (emphasis added).

4

210 F.3d 168, 175 (3d Cir. 2000). As the Supreme Court stated in *Steel Co.*: "[W]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co.*, 523 U.S. at 94 (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). We exercise plenary authority to determine whether we have jurisdiction over the RRB's decision denying Cunningham's request to reopen her claim. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003).

In response to the RRB's jurisdictional challenge, Cunningham contends that this Court has jurisdiction over her petition for review on the grounds that the Board's denial of her request to reopen was a final decision within the meaning of 45 U.S.C. § 355(f), and that in any event federal common law provides a general right of judicial review in the absence of express statutory jurisdiction. In the alternative, Cunningham raises several other bases for this Court's jurisdiction, including: (1) that the Board's denial of her request to reopen raises a colorable constitutional due process claim; (2) that § 702 of the Administrative Procedure Act provides an independent basis for judicial review in this matter; and (3) that the RRB waived its jurisdictional arguments in this matter. Each of these arguments will be addressed in turn.

## A. Statutory Jurisdiction under the RRA and RUIA

### 1. Finality of the RRB's decision

Judicial review of decisions of the RRB is governed by § 5(f) of the RUIA, which states in pertinent part that "[a]ny claimant . . . aggrieved by a final decision under subsection (c) of this section, may, only after all administrative remedies within the Board will have been availed of and exhausted, obtain a review of any final decision of the Board by filing a petition for review . . . in the United States court of appeals." 45 U.S.C. § 355(f). In turn, subsection (c) of § 355 refers to several types of decisions of the

5

RRB on the merits of a claim for benefits. *See* 45 U.S.C. § 355(c).[4]

---

[4]45 U.S.C. § 355(c) provides in pertinent part:

(2)     Any claimant whose claim for benefits has been denied in an initial determination with respect thereto upon the basis of his not being a qualified employee, and any claimant who contends that under an initial determination of his claim he has been awarded benefits at less than the proper rate, may appeal to the Board for the review of such determination. * * *

(3)     Any base-year employer of a claimant whose claim for benefits has been granted in whole or in part, either in an initial determination with respect thereto or in a determination after a hearing pursuant to paragraph (1), and who contends that the determination is erroneous for a reason or reasons other than a reason that is reviewable under paragraph (4), may appeal to the Board for review of such determination. * * *

(4)     In any case in which benefits are awarded to a claimant in whole or in part upon the basis of pay earned in the service of a person or company found by the Board to be an employer as defined in this chapter but which denies that it is such an employer, such benefits awarded on such basis shall be paid to such claimant subject to a right of recovery of such benefits. The Board shall thereupon designate one of its officers or employees to receive evidence and to report to the Board on whether such benefits should be repaid. * * *

(5)     * * * Any properly interested party notified, as hereinabove provided, of his right to participate in the proceedings may obtain a review of any such decision by which he claims to be aggrieved or the

Thus, under the plain language of § 355(f), this Court has jurisdiction to review final decisions of the RRB on the merits of a claim for benefits only after administrative remedies have been exhausted. As a further limitation on our review of RRB decisions, § 355(g) provides that "[f]indings of fact and conclusions of law of the Board in the determination of any claim for benefits . . . shall not be subject to review in any manner other than that set forth in subsection (f) of this section."  There is no provision in the statute allowing the Board to reopen a prior claim for benefits following an untimely appeal, nor is there a provision permitting for judicial review of such a decision.  To the contrary, the Board's authority to reopen prior claims for benefits upon a showing of good cause stems solely from the RRB's own regulation.  *See* 20 C.F.R. § 260.5(c).

Thus, for this Court to have jurisdiction to review the Board's decision in this matter, Cunningham must show that the Board's decision not to reopen her prior claim for benefits was a final decision of the Board issued on the merits of her claim after she exhausted her administrative remedies within the meaning of § 355(f).  However, Cunningham here has not exhausted her administrative remedies before the RRB because she failed to timely appeal the decision of the Bureau affirming the denial of benefits to the Board within the 60-day time period.  Moreover, the Board's decision refusing to reopen Cunningham's prior claim for benefits was not a final decision of the Board on the merits of the claim within the meaning of § 355(c).  The only final decision in this matter was the Bureau's October 2, 2000 decision affirming the denial of Cunningham's motion to reconsider the adjudicating officer's decision, which became final following the closing of the 60-day appeal window. *See* 45 U.S.C. § 355(d); *see also* 20 C.F.R. §§ 260.1, 260.9, and 261.1(b).  That decision is not properly before this Court.  Accordingly, in light of the plain language of § 355(f),

determination of any issue therein in the manner provided in subsection (f) of this section with respect to the review of the Board's decisions upon claims for benefits and subject to all provisions of law applicable to the review of such decisions. * * *

we lack jurisdiction under the RUIA to review Cunningham's petition.[5]

We note that the majority of the circuits that have considered these provisions have reached the same conclusion as we do, that decisions of the RRB not to reopen prior claims are not subject to review under the RUIA. *See Roberts v. R.R. Ret. Bd.*, 346 F.3d 139 (5th Cir. 2003); *Rivera v. R.R. Ret. Bd.*, 262 F.3d 1005 (9th Cir. 2001); *Harris v. R.R. Ret. Bd.*, 198 F.3d 139 (4th Cir. 1999); *Abbruzzese v. R.R. Ret. Bd.*, 63 F.3d 972 (10th Cir. 1995); *Gutierrez v. R.R. Ret. Bd.*, 918 F.2d 567 (6th Cir. 1990); *Steebe v. R.R. Ret. Bd.*, 708 F.2d 250 (7th Cir. 1983).[6]

Each of these courts found the Supreme Court's decision in *Califano v. Sanders*, 430 U.S. 99 (1977), persuasive in analyzing

_____

[5]At oral argument, counsel for Cunningham argued that a reading of the phrase "aggrieved by a final decision under subsection (c)" in § 355(f), to mean that § 355(c) contains the exclusive list of final decisions subject to judicial review under the statute, would render § 355(d) superfluous and unnecessary. We disagree. Section 355(f) clearly states its intention to incorporate the types of decisions listed in § 355(c) as being suitable for review by the courts of appeals. In contrast, § 355(d) concerns itself with the procedures the RRB is to use in arriving at such a final decision. Contrary to counsel's suggestion, our reading of the statutory scheme in these three provisions is consistent.

[6]Although these courts have concluded that decisions of the RRB not to reopen prior claims following untimely appeals are not subject to review, our sister circuits have used differing rationales for their decisions. The Sixth Circuit in *Gutierrez* assumed for the sake of argument that such a decision would be a "final decision," but found that the lack of a timely appeal constituted a failure to exhaust administrative remedies within the meaning of § 355(c) and § 355(f). *Gutierrez*, 918 F.2d at 570. In contrast, the Fourth, Seventh, Ninth, and Tenth Circuits held that such a Board decision was not a "final decision" within the meaning of those provisions. *See Rivera*, 262 F.3d at 1009; *Harris*, 198 F.3d at 142; *Abbruzzese*, 63 F.3d at 974; *Steebe*, 708 F.2d at 254-55.

the relevant jurisdictional provisions of the RUIA. In *Sanders*, the Supreme Court held that the Social Security Act did not grant jurisdiction to the federal courts to review a decision of the Secretary of Health, Education, and Welfare not to reopen a claim for Social Security benefits. 430 U.S. at 107-08. The Supreme Court rested its decision in part on § 205(g) of the Social Security Act, which limits judicial review to only "final decisions" of the Secretary. *Id.* at 108. As other courts have noted, the jurisdictional language of the Social Security Act, and in particular § 205(g), 42 U.S.C. § 405(g),[7] is similar to 45 U.S.C. § 355(f). *See, e.g.*, *Roberts*, 346 F.3d at 141; *Abbruzzese*, 63 F.3d at 974. Moreover, because of the similarities between the Social Security Act and the RRA and RUIA, it is "accepted practice to use social security cases as precedent for railroad retirement cases." *See, e.g.*, *Abbruzzese*, 63 F.3d at 974 n.3 (internal quotation omitted); *Harris*, 198 F.3d at 142 n.4. Accordingly, we find *Sanders* to be persuasive that judicial review of the RRB decision in this matter, as a matter of statutory interpretation, is not appropriate.

We have previously applied *Sanders* in interpreting the jurisdictional provision of the Social Security Act, 42 U.S.C. § 405(g), and have held that decisions by the social security Appeals Council refusing to reopen a prior claim for benefits are not final decisions. *See Bacon v. Sullivan*, 969 F.2d 1517, 1520 (3d Cir. 1992). In *Bacon*, the claimant, after being denied certain social security disability benefits, filed an appeal with the Appeals Council one day too late after the expiration of the 60-day appeal period. *Id.* at 1518. Although Bacon argued that her late filing was due "to an inadvertent and inexplicable oversight in the mailroom" of her attorney, the Appeals Council dismissed the appeal, finding that no good cause existed to extend her time for filing a request for review. *Id.* (internal quotations omitted). On appeal, this Court was presented with the question of whether the decision of the

[7]42 U.S.C. § 405(g) provided: "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days . . . ."

Appeals Council not to consider claimant's late appeal was a reviewable final order within the meaning of 42 U.S.C. § 405(g). *Id.* Construing § 405(g) and the administrative provisions of the Appeals Council, we concluded that a decision not to consider an untimely appeal was not a final decision within the meaning of the statute and held that we lacked jurisdiction to hear the petition. *Id.* at 1520-21.

Cunningham argues that she did receive a final decision in this matter and otherwise exhausted her administrative remedies because she filed a motion to reopen for good cause with the Board, which was denied, and now has essentially nowhere else to go except to this Court. We disagree. As we stated in *Bacon*, "a 'final decision' is a particular type of agency action, and not all agency determinations are final decisions." *Bacon*, 969 F.2d at 1519-20 (citing *Sanders*, 430 U.S. at 107-08). As noted above, the only final decision Cunningham received in this matter was the Bureau's October 2, 2000 decision affirming the denial of Cunningham's motions for reconsideration which became final following the expiration of the 60-day appeal window; that decision is not before this Court. It is simply not the case that the Board's April 23, 2002 decision refusing to reopen her claim for benefits is rendered a final decision because Cunningham has no other procedural remedies available within the RRB. Moreover, Cunningham's position, if adopted, would frustrate the goal of ensuring finality of RRB decisions on the merits of claims for benefits. *See Sanders*, 430 U.S. at 108 (noting that "an interpretation that would allow a claimant judicial review simply by filing and being denied a petition to reopen his claim would frustrate the congressional purpose . . . to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits"). Here, Cunningham filed her motion to reopen some 14 months after the expiration of her 60-day appeal period, but under the reasoning of her position, there would be no bar to judicial review of a denial of a motion to reopen filed many years after the expiration of the 60-day appeal period.

2. Federal common law

Conceding that the majority of the circuits have adopted the

view that we do now, Cunningham argues that fairness concerns warrant that this Court reject the majority approach and instead find a right of review over the Board's decision in the federal common law. Petitioner relies on the decisions of the Second and Eighth Circuits in *Szostak v. R.R. Ret. Bd.*, 370 F.2d 253 (2d Cir. 1966), and *Sones v. R.R. Ret. Bd.*, 933 F.2d 636 (8th Cir. 1991). In *Szostak*, the Second Circuit held that a decision of the RRB refusing to reopen a claim following an untimely appeal could be reviewed for abuse of discretion either under the Administrative Procedure Act ("APA"), or if the APA was inapplicable, then under the federal common law. *Szostak*, 370 F.2d at 254-55. The Eighth Circuit in *Sones* relied on *Szostak* to hold that it also could review the refusal of the RRB to reopen a claim under an abuse of discretion standard. *See Sones*, 933 F.2d at 638.

We decline to follow either case. *Szostak* was decided before the Supreme Court construed the jurisdictional provisions of the Social Security Act in *Sanders*, and *Sones* does not appear to consider *Sanders*.[8] Moreover, it is not entirely clear whether *Szostak* remains viable after the *Sanders* decision. In addition to holding that decisions under the Social Security Act not to reopen untimely claims were not subject to judicial review, the Supreme Court in *Sanders* resolved a circuit split at the time by rejecting the notion that the APA provided an implied grant of subject matter jurisdiction to review agency action in the absence of an alternative express grant of statutory jurisdiction. 430 U.S. at 105.[9] *Szostak*, however, appeared to rely on the implied grant of jurisdiction from the APA to review agency decisions not to reopen, an implication

_____

[8]It is unclear why the *Sones* court did not consider *Sanders*, considering that previously the Eighth Circuit had stated that "[t]he standards and rules for determining disability under the Railroad Retirement Act are identical to those under the more frequently litigated Social Security Act, and it is the accepted practice to use social security cases as precedent for railroad retirement cases." *See Burleson v. R.R. Ret. Bd.*, 711 F.2d 861, 862 (8th Cir. 1983).

[9]We note that this APA argument is not the one that Cunningham advances in her brief. That argument is discussed in Part II.C of this opinion.

11

which *Sanders* subsequently rejected. The federal common law issue was raised in *Szostak* only as a backup or alternative basis for jurisdiction after the Court noted that the RRB (as discussed below) may be exempt from the APA. *Szostak*, 370 F.2d at 254-55. Thus, we are in doubt whether *Szostak*, with its primary reasoning relying on the APA undercut by *Sanders*, is still persuasive authority for the proposition that federal common law provides a basis for review of the Board's refusal to reopen. *See Abbruzzese*, 63 F.3d at 974 (noting that *Sanders* served to overrule *Szostak*).[10]

In any event, we do not believe that resort to the federal common law to review the Board's decision in this matter is appropriate. A federal court has the power "to declare, as a matter of common law or 'judicial legislation,' rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress." *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973); *see also Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 438 (3d Cir. 1993) (noting that "federal courts have the power to create so-called 'interstitial' federal common law to

---

[10]*Szostak* cited an earlier decision of the Second Circuit in *Cappadora v. Celebrezze*, 356 F.2d 1, 5-6 (2d Cir. 1966), for the principle that the APA would provide jurisdiction for review of an agency action refusing to reopen under an abuse of discretion standard. *See Szostak*, 370 F.2d at 254. In *Cappadora*, the Second Circuit held that the refusal to reopen the denial of benefits was reviewable under § 10 of the APA under an abuse of discretion standard. 356 F.2d at 5-6. However, in *Sanders*, the Supreme Court specifically rejected the notion that § 10 of the APA provided what amounted to an implied grant of subject matter jurisdiction for judicial review of agency action in the absence of other express statutory authorization. *See* 430 U.S. at 107. We note that the Second Circuit itself shied away from the *Cappadora* decision shortly before the Supreme Court decided *Sanders*. *See S. Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913 n.3 (2d Cir. 1976) (noting that the Second Circuit has avoided addressing the question of implied APA jurisdiction since the *Cappadora* decision).

12

govern issues closely interwoven with a broad scheme of federal statutory regulation") (internal citation and quotation omitted). However, in light of the provisions regarding judicial review in the RUIA, the RRB's regulations concerning the finality of its decisions, and the *Sanders* Court's denial of review of similar decisions in the Social Security context, it seems clear that judicial review of a decision by the RRB not to reopen a claim, absent constitutional issues, is in no way necessary to fill gaps in the RUIA or effectuate Congress' purpose in enacting the statute. Accordingly, we decline to adopt a federal common law right of review of the Board's refusal to reopen a claim for benefits.

## B.      Constitutional Claim

Petitioner next attempts to invoke an exception to the statutory bar on judicial review recognized in *Sanders* and the approach of the majority of circuits. The so-called *Sanders* exception provides that a court may review an administrative refusal to reopen when that refusal raises a colorable constitutional issue. *See Sanders*, 430 U.S. at 109; *Harris*, 198 F.3d at 142-43; *Abbruzzese*, 63 F.3d at 974; *Steebe*, 708 F.2d at 256. We have previously recognized the *Sanders* exception, noting that because "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures . . .[,] access to the courts is essential to the decision of such questions." *Penner v. Schweiker*, 701 F.2d 256, 260 (3d Cir. 1983); *see also Bacon*, 969 F.2d at 1521.

Cunningham argues that her Fifth Amendment procedural due process rights were violated when the Board failed to provide her with an oral hearing in connection with its denial of her motion to reopen. Cunningham asserts that the Board's exclusive reliance on written submissions was unfair and prone to error because *pro se* claimants, like herself, are otherwise unable to argue persuasively and present evidence in favor of their good cause explanations. Undoubtedly, it is true that an oral hearing would assist a *pro se* petitioner such as Cunningham to make a more complete presentation on the issue of good cause. However, the issue before the Court is whether the Constitution requires such a hearing for *pro se* claimants as a matter of due process.

13

We do not find Cunningham's argument persuasive. As an initial matter, we note that Cunningham has not cited any authority to this Court under which an oral hearing in connection with the evaluation of a motion to reopen a claim for benefits was found to be constitutionally required as a matter of due process.[11] To the contrary, in *Bacon*, the claimant received no hearing in connection with her good cause written submission, and although she did not raise a constitutional claim as Cunningham does in this case, we did note in *Bacon* that the claimant "received all the process due to her." 969 F.2d at 1522.

In support of her due process argument, Cunningham cites the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* held that, although due process requires that an individual receive "an opportunity to be heard at a meaningful time and in a meaningful manner," *id*. at 333 (internal quotation omitted), Social Security disability benefits may be terminated without a pre-deprivation hearing. *Id*.; *see also Goldberg v. Kelly*, 397 U.S. 254 (1970) (requiring that an oral hearing be given prior to discontinuing welfare benefits). Cunningham seizes on the language in *Mathews* that "some form of a hearing is required" before deprivation of a property interest as well as the Supreme Court's statement that in *Goldberg* it found that "written submissions were an inadequate substitute for oral presentations." *Mathews*, 424 U.S. at 333, 345. As an initial matter, we note that the *Mathews* Court, in a context much more analogous to this case than the welfare context, found that the nature of the inquiry and the lack of dire need of the claimants (as compared to welfare recipients) diminished the necessity for oral hearings. *Id*. at 340-41, 343-44. More important, however, is the fact that Cunningham *did* receive an oral (telephone) hearing in this case with the hearing officer who conducted the Bureau appeal, at which point she was allowed to, and did, testify. The decisions in *Goldberg* and *Mathews* cannot stand for the broad proposition that administrative

---

[11]From Cunningham's brief, it appears that she did not request a hearing before the Board. However, she now argues that, notwithstanding her lack of request, the Board was constitutionally required to offer her one.

14

agencies, when revoking property interests, must provide oral hearings to claimants at every step of the review process regardless of whether requests for such hearings were made.

In addition, our decision in *Penner*, the only case in which this Court has found a due process violation with regard to a motion to reopen, weighs against finding a similar violation in this case. 701 F.2d at 258. In *Penner*, a claimant with severe mental deficiencies filed *pro se* for disability benefits with the Secretary of Health and Human Services. After his initial benefits claim was denied, the claimant retained counsel, who proceeded to request reconsideration of the ALJ's decision and instructed the Secretary, pursuant to agency regulations, that all further mailings and notices be sent to counsel as well, as the claimant was no longer in a position to act on his own behalf. *Id.* After the request for reconsideration was denied, however, the Secretary inexplicably and in violation of its own regulations mailed a copy of the denial only to the claimant, and not to counsel, such that counsel was unable to request a hearing within the 60-day period. *Id.* When counsel learned of the denial some several months later, he filed for a hearing, which was denied as untimely, and no good cause was found to reopen the matter. *Id.* The claimant filed an appeal to the district court, which dismissed the action for lack of jurisdiction under *Sanders*. *Id.* at 259. This Court reversed, finding that a colorable constitutional claim had been properly stated where claimant had alleged that his mental incapacity did not permit him to timely file for a hearing and pursue his administrative remedies; the Court ordered a remand to the agency to gather additional evidence on the issue of the mental infirmity. *Id.* at 261. *Penner* hinged on the fact that the claimant alleged a due process violation on account of the prejudicial conduct of the agency which failed to properly notify claimant, through his counsel, of his right to a hearing, despite previously having agreed to do so. *Id.* at 260.

In contrast, in this matter, the RRB did not in any way prejudice Cunningham's attempt to invoke the good cause exception to the timeliness requirement. As Cunningham concedes, her error was that she "did not realize this was a proceeding where persuasive writing and evidence were necessary," (Br. of Petitioner at 21), and she seeks an oral hearing

15

in retrospect only as an opportunity to develop further her good cause explanation. Therefore, in light of *Penner*, Petitioner's allegation of a due process violation is unsustainable.

In addition, we are troubled by the implication of Cunningham's position, which would require the Board to provide an oral hearing each time a *pro se* claimant sought to show good cause to reopen an untimely appeal. Such hearings would be a significant strain on the RRB's resources, yet it is not entirely clear from Cunningham what additional value would be gained by imposing such an obligation on the Board when written submissions, properly crafted, would be sufficient. *See Mathews*, 424 U.S. at 347 (noting that "the administrative burden" must be considered when "striking the appropriate due process balance"). There may be situations where an evidentiary hearing in connection with a motion to reopen a prior claim for benefits could be constitutionally required, but we are not persuaded that this is such a case. Accordingly, we do not find that Cunningham has stated a colorable constitutional claim for violation of her due process rights. *See Harris*, 198 F.3d at 142-43 (holding that *Sanders* exception is not applicable where claimant failed to show any constitutional deprivation as a result of RRB's decision that good cause did not exist for late filing); *Steebe*, 708 F.2d at 256 n.5.

## C. Administrative Procedure Act

Cunningham next argues that § 702 of the APA provides for a general right of review over RRB decisions not to reopen prior claims following untimely appeals and serves to provide jurisdiction in this matter. Section 702 states that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

However, it is unclear whether the RRB is subject to the APA by virtue of an exemption to the definition of "agency" contained in the APA for agencies which are "composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them." 5 U.S.C.

§ 551(1)(E). The three-member Board consists of one member appointed based on the recommendation of rail labor, one member appointed based on the recommendation of rail management, and one member–the Chairman–appointed to represent the public. *See* 45 U.S.C. § 231f(a); *see also* H.R. Rep. No. 1980, at 19 (79th Con. 2d Sess. 1946) (noting that the exemption at 5 U.S.C. § 551(1) excludes "such agencies as the National Railroad Adjustment Board and the *Railroad Retirement Board*") (emphasis added).

However, we need not decide whether the RRB is exempt from the APA. We follow the approach of the Seventh Circuit in *Steebe*, which held that § 355(g) of the RUIA, 45 U.S.C. § 355(g), which states that Board decisions "shall not be subject to review in any other manner other than that set forth in subsection (f) [45 U.S.C. § 355(f)] of this section," precluded jurisdiction from separately arising under the APA. *Steebe*, 708 F.2d at 254 (citing *Sanders*, 430 U.S. 99, and *Ry. Express Agency v. Kennedy*, 189 F.2d 801, 804 (7th Cir. 1951)). We agree and accordingly hold that we may not review a decision of the RRB to reopen a prior claim for benefits under the APA.

### D. Waiver of Jurisdictional Objections

Finally, Cunningham argues that the RRB waived its exhaustion of administrative remedies argument and rendered the April 23, 2002 decision a final decision when it mailed a cover letter, along with a copy of the Board's April 23, 2003 decision, inadvertently advising Cunningham that she "may seek judicial review of the Board's opinion by filing a petition for review with an appropriate United States court of appeals." Petitioner relies heavily on two cases in support of her waiver argument: *Sipple v. Califano*, 455 F. Supp. 528 (S.D.W. Va. 1978), and *Funderburk v. Califano*, 432 F. Supp. 657 (W.D.N.C. 1977).

In *Funderburk*, the claimant had sought disability benefits but had been denied such benefits by an administrative law judge. The decision was upheld by the Appeals Council on September 15, 1976. 432 F. Supp. at 658. By regulation, the claimant had 60 days, until November 19, 1976, in which to file a petition for review with a district court. *Id.* Several days before the expiration

17

of the 60-day period, the Legal Aid Society assumed representation of claimant and requested that the Appeals Council keep open claimant's file pending submission of additional evidence. *Id.* In a letter dated November 16, 1976, just three days before the expiration of the 60-day judicial review period, the Appeals Council agreed. *Id.* The claimant, represented by new counsel, proceeded to submit new evidence to the Appeals Council, which nonetheless eventually denied the claim again. *Id.* Petitioner thereafter initiated suit on February 25, 1977 in district court, well outside the 60-day period from the September 15, 1976 decision, and the government argued that this barred judicial review. *Id.* The district court disagreed and found that the 60-day period had been waived when the government placed the claimant in a "Catch-22": The government "should not be entitled to assert the statute here where the Appeals Council invited plaintiff to submit additional evidence three days before the time limit for filing suit expired, forcing plaintiff to choose whether to pursue additional administrative channels or to institute a possibly needless civil action." *Id.* at 659.

Similarly, in *Sipple*, after his denial of benefits was affirmed by the Appeals Council, the claimant, through his counsel, requested that his claim be reopened to consider additional evidence and that he be granted an extension of the 60-day period in which to file a petition for review in district court. 455 F. Supp. at 529. After failing to respond to several earlier requests, the Appeals Council, in a letter dated only 10 days prior to the expiration of the 60-day period, agreed to consider additional evidence submitted by claimant. In subsequent litigation, the district court found that the government had waived the 60-day period by placing the claimant in the impossible position of having to decide whether to submit new evidence to the Appeals Council in the remaining 10 days at the risk of missing the deadline to file suit in federal court, or appeal to the district court immediately, thereby foregoing the invitation to submit additional evidence. *Id.* at 530 (citing *Funderburk*).

This case is unlike either *Sipple* or *Funderburk*. Although, as we discussed above, the jurisdictional provision of the Social Security Act, 42 U.S.C. § 405(g), at issue in *Sipple* and *Funderburk*

18

is similar to 45 U.S.C. § 355(f), they differ in one important respect. Whereas 45 U.S.C. § 355(f) contains express language requiring that "all administrative remedies within the Board will have been availed of and exhausted," no similar language appears in § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Thus, although courts have been willing to read in and allow waiver of an exhaustion requirement under the Social Security Act in certain circumstances, *see, e.g.*, *Bacon*, 969 F.2d at 1522, we note that the exhaustion requirement under the RUIA is itself jurisdictional, defining the terms under which this Court may sit in review of decisions of the RRB. Because Cunningham has not exhausted her administrative remedies before the RRB, we are not in a position to ignore the jurisdictional prerequisite of 45 U.S.C. § 355(f) on account of the cover letter mailed by the RRB.[12]

In addition, we find *Sipple* and *Funderburk* distinguishable to the extent that Cunningham had not been placed in any "Catch-22" situation where she was forced to choose between pursuing additional administrative remedies or seeking an immediate appeal

---

[12]At oral argument, counsel for the RRB stated that it was the Board's position that the exhaustion requirement of 45 U.S.C. § 355(f) was in fact waivable. The Board was concerned that a ruling that exhaustion was not waivable could serve to undermine the administrative scheme by which the Board permits claimants to file late appeals on motions to reopen upon a showing of good cause, even though such claimants had failed to exhaust their administrative remedies by filing a timely appeal in the first place.

We need not decide in this case whether the Board's administrative scheme excusing untimely appeals for good cause is consistent with 45 U.S.C. § 355(f). We note, however, that this provision governs the jurisdiction of the courts of appeals over decisions of the RRB, and not the scope of authority of the RRB to set its internal review procedures. In holding that exhaustion is a non-waivable jurisdictional element, we only acknowledge the limits on our power of review imposed by Congress, which is distinct and separate from the ability of the RRB to reopen a prior final decision.

19

to this Court. To the contrary, after the Board issued its April 23, 2003 decision finding no good cause to reopen, Cunningham no longer had any further administrative remedies before the RRB and had simply run out of options. While the RRB's erroneous cover letter to Cunningham may have created a false sense of hope in her right to appeal, it did not in any way force her to choose between two unenviable options or otherwise prejudice her administrative or judicial remedies. The standard form cover letter, which was prepared by the secretary to the Board as part of her ministerial duties, did not request additional information or evidence as the agency had done in *Sipple* and *Funderburk.* Its purpose was solely to inform Cunningham of the deadline for filing with the Court. We thus find no waiver.

## III. CONCLUSION

For the reasons discussed above, we find that we lack jurisdiction over this matter and accordingly will dismiss the petition for review.